[Sac. No. 6175. In Bank. May 15, 1951.]

JAMES G. BRYANT, as Director of Employment, et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION, Respondent.

Fred N. Howser and Edmund G. Brown, Attorneys General, Chas. W. Johnson, Irving H. Perluss, William L. Shaw and Vincent P. Lafferty, Deputy Attorneys General, for Petitioners.

Sidney L. Weinstock, as Amicus Curiae on behalf of Petitioners.

Edmund J. Thomas, Jr., T. Groezinger and Robert Ball for Respondent.

Charles P. Scully, as Amicus Curiae on behalf of Respondent.

SCHAUER, J.—Petitioners, the Director of Employment and the Department of Employment, seek review of an award of respondent Industrial Accident Commission, and annulment of the portion of the award which denies petitioners' claim of a lien against certain workmen's compensation awarded to Herbert R. Wade. On June 22, 1948, Wade sustained an injury arising out of and in the course of his employment. He instituted proceedings before the Industrial Accident Commission to recover workmen's compensation. During the pendency of such proceedings, over a period of

four months from June through October, 1949, the Department of Employment paid the applicant Wade, as unemployment compensation disability benefits,[1] the sum of $460.72. In the proceedings before the Industrial Accident Commission, the Department of Employment claimed a lien in this amount against any workmen's compensation which might be awarded Wade.[2] The Industrial Accident Commission determined that Wade was entitled to workmen's compensation for temporary total disability from June 30, 1948, to July 26, 1949, and for permanent partial disability from August 3, 1949, until expiration of 175 weeks. It allowed a lien for the amount of unemployment disability benefits paid during the period when, according to its order, applicant was entitled to workmen's compensation for temporary disability and disallowed the lien for the benefits paid during the period when, according to its determination, applicant was entitled to workmen's compensation for permanent disability.

Petitioners contend that as a matter of law they are entitled to a lien against workmen's compensation for the entire amount paid as unemployment disability benefits, regardless of whether the workmen's compensation was awarded for temporary disability or for permanent disability. The Industrial Accident Commission contends that in every case it has discretion as to whether it will allow a lien against workmen's compensation; that where the claimed lien is for unemployment disability benefits it would be an abuse of discretion to deny the lien for benefits paid during a period of temporary disability, but that the commission "is fully justified" in denying a lien for benefits paid during a period of permanent disability. Amicus curiae State Federation of Labor contends that as a matter of law an unemployed, disabled applicant is entitled to both unemployment disability benefits and workmen's permanent disability compensation. Resolution of the various contentions depends upon interpretation of the Labor Code and the Unemployment Insurance Act (3 Deering's Gen. Laws, Act 8780d). Consideration of the pertinent statutory provisions leads to the conclusion that the petitioners as a matter of law

---

[1]The Unemployment Insurance Act (3 Deering's Gen. Laws, Act 8780d, § 152, par. (b)) defines "unemployment compensation disability benefits" as "money payments . . . to an eligible unemployed individual with respect to his wage losses due to unemployment as a result of illness or other disability resulting in such individual being unavailable or unable to work due to such illness or disability."

[2]The Labor Code (§ 4903, par. (f) quoted *infra*), provides for such a lien.

are entitled to the lien claimed in its entirety and that the respondent commission exceeded its authority in denying the lien in part.

Prior to the adoption of the unemployment compensation disability insurance program, the Senate Interim Committee on Unemployment Insurance reported that "In California where a worker is unemployed because of injury arising within the scope of his employment, some protection is offered by the Workmen's Compensation Act. If an individual is unemployed because of lack of work, benefits are provided under the Unemployment Insurance Act. However, for the worker who is unemployed because of an injury not within the reach of the Workmen's Compensation Act no protection whatsoever is granted. Your committee feels it is an anomalous situation and a serious gap in providing economic security for the large working population of the state." (Senate Journal, May 7, 1945, p. 85.) The committee recommended adoption of an insurance program "to pay benefits to individuals who are unemployed because of illness or injury *for which no compensation is otherwise made*" (*Id.*, p. 126; italics petitioners') and further recommended "That no disability benefits be paid to an individual receiving unemployment insurance benefits or workmen's compensation" (*Id.*, p. 89).

The next session of the Legislature adopted article 10 of the Unemployment Insurance Act (3 Deering's Gen. Laws, Act 8780d; Stats. 1st Ex.Sess. 1946, ch. 81, § 1). Article 10 provides for unemployment disability benefits. Section 207 thereof provided, "An individual shall be ineligible for unemployment compensation disability benefits with respect to any week which the commission [the Unemployment Stabilization Commission] finds that he has received or is entitled to receive . . . benefits under a workmen's compensation law . . ." Under this language an unemployed disabled applicant might have been found ineligible for unemployment disability benefits if he received, for example, medical treatment, or a very small workmen's compensation payment for a slight previous disability unrelated to the disability which caused his unemployment. Therefore, in 1947 the Legislature amended section 207.

Paragraph (b) of section 207, as amended in 1947, now provides, "An individual shall not be eligible for unemployment compensation disability benefits for any week of unemployment due primarily to a disability, for which week the commission [the Unemployment Stabilization Commission]

finds that with respect to such disability he has received, or is entitled to receive, in the form of cash payments, benefits under a workmen's compensation law, . . . provided, however, that if such benefits are less than the weekly amount he would have otherwise received as disability benefits under Article 10 of this act, he shall be entitled to receive for such week, if otherwise eligible, disability benefits, reduced by the amount of such cash payments.'' ▮ Section 207 clearly shows that the Legislature did not intend to permit recovery of both unemployment disability benefits and workmen's compensation for the same period of unemployment. At the same session during which it enacted the last-quoted version of section 207, the Legislature added paragraph (f) to section 4903 of the Labor Code. That section had provided that ''The commission [the Industrial Accident Commission] may determine, and allow as a lien against any amount to be paid as compensation:'' (a) Reasonable fee for legal services in connection with the claim for compensation. (b) Reasonable expenses for medical treatment of the industrial injury. (c) Reasonable value of living expenses subsequent to the injury. (d) Reasonable burial expenses of deceased employe. (e) Reasonable living expenses of deserted wife or minor children. Paragraph (f), added in 1947, reads, ''The amount of unemployment compensation disability benefits which have been paid under or pursuant to the Unemployment Insurance Act in those cases where, pending a determination under Division 4 of this code, there was uncertainty whether such benefits were payable under that act or payable hereunder.'' Paragraph (g), added in 1949, reads, ''The amount of unemployment compensation benefits paid erroneously to the injured employee for a period for which he was unable to work and for which he received temporary total disability payments under this division.''

▮ It does not appear that the Legislature, by adding paragraph (f) to section 4903 of the Labor Code in 1947, changed the right of an applicant to receive unemployment disability benefits; it merely provided a means for the Unemployment Stabilization Commission to recover such benefits when it was finally determined by the Industrial Accident Commission that the applicant was entitled to workmen's compensation. The reason for providing such means is obvious. An applicant is not entitled to unemployment disability benefits for a period of unemployment which, according to the findings of the Unemployment Stabilization Commis-

sion, was due to a disability for which he was entitled to workmen's compensation. But if the question whether the applicant is entitled to workmen's compensation is contested, the Unemployment Stabilization Commission cannot make a final determination of the question; such determination must be made by the Industrial Accident Commission. Pending such final determination the Department of Employment might, as it did here, pay the applicant unemployment disability benefits. This is precisely the situation described in paragraph (f) of section 4903 "where, pending a determination under Division 4 of this code, there was uncertainty whether such benefits were payable under that act [the Unemployment Insurance Act] or payable hereunder."

It is the commission's[3] position that, because section 4903 provides that it "may" allow a lien and because "'may' is permissive" (Lab. Code, § 15), it "may" in its discretion refuse to allow liens under section 4903. The following cases suggest that the commission's "discretion" as to liens under paragraphs (a) through (e) of section 4903, though wide, does not include "discretion" to disallow completely a lien where it is established that the lien claimant did furnish services or living expenses of value : *Independence Indem. Co.* v. *Industrial Acc. Com.* (1935), 2 Cal.2d 397, 404, 407 [41 P.2d 320] ; *Pacific Emp. Ins. Co.* v. *Industrial Acc. Com.* (1938), 10 Cal.2d 567, 578 [75 P.2d 1058] ; *Schilling* v. *Industrial Acc. Com.* (1920), 47 Cal.App. 190, 192 [190 P. 373] ; *Safway Steel etc. Co.* v. *Industrial Acc. Com.* (1942), 55 Cal. App.2d 388, 389 [130 P.2d 484] ; *Bentley* v. *Industrial Acc. Com.* (1946), 75 Cal.App.2d 547, 549 [171 P.2d 532]. The commission relies on *Di Pasqua* v. *Industrial Acc. Com.* (1949), 14 Cal.Comp. Cases 251, 252, in support of its contention that section 4903 gives it "discretion" to disallow a proved lien. In that case there were proper grounds for disallowing the lien, and any implication that the commission had "discretion" to deny a proved lien was not necessary to its decision. A good example of the sort of discretion which the commission has under section 4903 is *Flagler* v. *Kelly* (1941), 6 Cal.Comp. Cases 307. There the unpaid balance of compensation was insufficient to pay the claimed liens for rent and attorney's fee. The commission divided the amount available pro rata between the two lien claimants on the theory that this was the most equitable way to obtain the desired result, that is, not to dis-

---

[3]The word "commission" as used in this discussion, unless otherwise indicated, refers to the Industrial Accident Commission.

courage landlords from furnishing quarters to injured employes and not to discourage attorneys from representing them.

The commission urges that it soundly exercised its discretion when it awarded a lien only for unemployment disability benefits paid during the period while the applicant was entitled to workmen's compensation for temporary disability and not for benefits paid during the time he had a permanent disability rating. It argues as follows: Permanent disability compensation is intended to provide the employe with sustenance while he rehabilitates himself and adjusts to his new earning capacity (1 Campbell, Workmen's Compensation, p. 728); it is payable for "prospective loss of future earnings" (*Department of Motor Vehicles* v. *Industrial Acc. Com.* (1939), 14 Cal.2d 189, 192 [93 P.2d 131]). Temporary disability compensation, since it is measured by a fraction of wages (Lab. Code, §§ 4653, 4654) is intended to partially compensate for loss of wages. Unemployment disability benefits too are intended "to compensate in part for the wage loss sustained by individuals unemployed because of sickness or injury" (3 Deering's Gen. Laws, Act 8780d, § 150). Therefore, it is proper that the workman should not receive both temporary disability compensation and unemployment disability benefits at the same time, since both are intended to compensate for the same loss; it is equally proper that the workman should receive unemployment disability benefits (just as he might receive wages) during the time he is receiving permanent disability compensation and adjusting himself to his new, disabled status. The commission asserts, further, that paragraph (b) of section 207 of the Unemployment Insurance Act (quoted *supra*, pp. 218-219) does not preclude simultaneous payment of permanent disability compensation and unemployment disability benefits, because the permanent disability compensation is not payable "for any week of unemployment due primarily to a disability"; rather, it is payable because of the employe's changed, permanently disabled condition. This tortuous construction reaches a result which, as we have already indicated, appears to us to be contrary to the legislative intent. Such result, to be sure, agrees with Industrial Accident Commission policy which has a reasonable theoretical basis. But it is the Legislature, not the commission, which sets the limits within which the commission can adopt and carry out policy.

■ The commission urges that the Legislature by recent amendments of section 4661 of the Labor Code further recognized that permanent disability compensation is to compensate for loss of ability to compete in the labor market in the future, and should not be diminished because the employe is receiving wages or unemployment compensation benefits on account of loss of wages. Prior to 1945 section 4661 provided, "Where an injury causes both temporary and permanent disability, the injured employee is not entitled to both a temporary and permanent disability payment, but only to the greater of the two." By a series of amendments (Stats. 1945, p. 2506; Stats. 1947, p. 2572; Stats. 1949, p. 346) the Legislature liberalized section 4661, and it now provides that "the injured employee is entitled to compensation for any permanent disability sustained by him in addition to any payment received by such injured employee for temporary disability." There is nothing in the history or context of section 4661 of the Labor Code which indicates that it was intended to have any effect on the construction of the Unemployment Insurance Act.

The State Federation of Labor urges that the Unemployment Insurance Act and the Labor Code require as a matter of law that the applicant who is unemployed because of an industrial injury shall receive unemployment disability benefits during the period of permanent disability rating for the purpose of workmen's compensation. The Federation agrees with the Industrial Accident Commission's distinction between the nature of temporary disability compensation (for loss of wages) and permanent disability compensation (for prospective loss of future earning power). It construes paragraph (f) of section 4903 of the Labor Code to mean, as indicated by the bracketed insertions, that the Industrial Accident Commission may allow as a lien "The amount of unemployment compensation disability benefits [that is, payments to compensate for wage loss] which have been paid under . . . the Unemployment Insurance Act in those cases where, pending a determination under Division 4 of this code, there was uncertainty whether *such* benefits [i. e., payments to compensate for wage loss, which include temporary but not permanent disability compensation] were payable under that act or payable hereunder." (Italics added by Federation.) According to the Federation, permanent disability compensation is not "such" a benefit as to which there could be "uncertainty" because it is not a payment to compensate for

wage loss and, therefore, paragraph (f) permits a lien against temporary compensation only.

This statutory construction is even more tortuous than that in which the commission indulges, and would lead to the remarkable conclusion that the phrase "any amount to be paid as compensation," which has been in the first clause of section 4903 since the adoption of the Labor Code and which has meant just what it says as to paragraphs (a) through (e), acquired a new meaning in 1947 as to paragraph (f) alone. If the Legislature had intended that the lien provided for in paragraph (f) should be against temporary disability compensation only it could have said so; that it knew how to write an amendment with such an effect is demonstrable, for in 1949 it adopted paragraph (g) (quoted *supra*, p. 219) which expressly so provides as to unemployment compensation benefits.

For the reasons above stated, the award is annulled and the cause is remanded to the Industrial Accident Commission for further proceedings in accord with this opinion.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., and Spence, J., concurred.

CARTER, J.—I dissent. This case presents the question of whether, under the applicable statutes, an employee unable to work because of an injury received in the course of his employment may receive unemployment disability payments under the Unemployment Insurance Act while he is receiving *permanent* disability payments for the injury under the workmen's compensation laws. It is conceded that the statutes do not permit such payments when the workman's compensation is for *temporary* disability as distinguished from *permanent* disability.

Under the law as stated and the background of the statutes here involved, the question must receive an affirmative answer if such statutes are given a reasonable and liberal construction as required by section 3202 of the Labor Code. The law was firmly established before the adoption of the unemployment disability provisions of the Unemployment Insurance Act that there was a clear distinction between temporary and permanent disability payments under workmen's compensation laws. That is clearly evinced by the following provisions of the Labor Code: "If the injury causes *temporary* total disability, the disability payment is sixty-five per cent of the average *weekly earnings* during the period

of such disability, consideration being given to the ability of the injured employee to compete in an open labor market." (Lab. Code, § 4653. Italics added.) "If the injury causes *temporary* partial disability, the disability payment is sixty-five per cent of the *weekly* loss in *wages* during the period of such disability." (Lab. Code, § 4654. Italics added.) On the other hand, compensation for *permanent* disability is computed in some cases for life (Lab. Code, § 4658) and takes into consideration "the nature of the physical injury or disfigurement, the *occupation* of the injured employee, and *his age* at the time of such injury, consideration being given to the *diminished ability* of such injured employee to compete in an open labor market." (Lab. Code, § 4660. Italics added.) That is to say, temporary disability payments are for *wages* actually lost while permanent disability is for impairment of *earning capacity*. The matter was clearly analyzed by this court in *Department of Motor Vehicles* v. *Industrial Accident Commission,* 14 Cal.2d 189, 191 [93 P.2d 131]: "The rule is well recognized that, generally, an employee is entitled to an award for *permanent* disability *without regard to the receipt of wages* after the injury. That the inability to return to reemployment is not a test for an allowance of permanent disability is determined by the Labor Code itself. Section 4660 thereof provides that, in determining the percentage of permanent disability, account shall be taken of the nature of the physical injury or disfigurement, the occupation of the injured employee, and his age at the time of such injury. . . .

"In *Postal Tel. etc. Co.* v. *Industrial Acc. Com.,* 213 Cal. 544 [3 P.2d 6], the rule is announced that wages earned by and paid to an injured employee subsequent to an award of compensation for a *permanent* disability could not be credited against such award, holding, in accordance with the rule followed in several industrial states, that the disability referred to in the statute was *not such disability as impaired present earning power only,* but embraced any loss of physical functions which detracted from the former efficiency in the ordinary pursuits of life. It is the prospective loss of future earning power under the existing handicap of physical impairment that is to be considered; and ability to do the exact work formerly done by the employee is not the sole measure of disability." (Italics added.) It is clear therefore that temporary disability payments under workmen's compensation laws are a substitute for wages lost by the em-

ployee while disabled. Hence if the payments for disability allowed under the Unemployment Insurance Act are also for such *wages* lost, then payments thereunder are deductible from such temporary disability compensation payments *only* and not from permanent disability compensation payments. That is, the unemployment disability provisions relate to and are compatible with only the temporary disability features of workmen's compensation. That it deals only with wages, rather than earning capacity is clear. "An individual shall be deemed disabled in *any week* in which, because of his physical or mental condition, he is unable to perform his regular or customary work." (Unemployment Insurance Act, Stats. 1935, p. 1226, as amended, § 201. Italics added.) The amount of benefits is computed on the basis of the wages payable (*id.* §§ 53, 54, 203), and, as noted in the majority opinion, the reference is to the *"weeks"* the employee receives benefits under the Workmen's Compensation Act, all pointing to the conclusion that wages, not earning capacity, is the basis for computing unemployment disability benefits.

That permanent disability payments should not be deducted from unemployment disability payments, or vice versa, is patently sensible. The former are for the loss for life of the capacity to earn a living. They are not apportioned according to certain periods of time, that is, one installment does not represent the payment for the loss of earning capacity for the ·installment period. The latter, however, are directly apportioned to *each week* and on the basis of the wages that would have been paid for that week had the employee not been disabled. There is, therefore, insufficient similarity between the two to justify balancing one against the other.

The only answer made by the majority opinion to the foregoing construction of the statute is that it is "tortuous." On the contrary it is wholly reasonable and compelled by the requirement that workmen's compensation laws be liberally construed to preserve their benefits to their beneficiaries. (Lab. Code, § 3202.)

Furthermore, my construction of the act is necessitated by the theory of workmen's compensation that industry shall bear the burden of industrial injuries. (27 Cal.Jur. 256.) Under the Unemployment Insurance Act (§ 44) the employee contributes to the fund from which the benefits are payable. To that extent, he, not industry, is bearing the cost of an industrial injury.

Finally, there is an additional factor that makes the foregoing interpretation of the statutes mandatory, if anything is to be salvaged from the legislative declaration that an employee is entitled to *both temporary and permanent disability. Prior* to its amendment in 1945, section 4661 of the Labor Code provided: "Where an injury causing both temporary and permanent disability, the injured employee is *not entitled to both a temporary and permanent disability payment,* but only to the greater of the two." (Italics added.) In that year it was amended to allow a recovery of both permanent and temporary disability compensation in part by adding the following sentence: "except that where the temporary disability payment exceeds 25 per cent of the permanent disability payment the injured employee shall be paid 75 per cent of such permanent disability payment in addition to the temporary disability payment." (Stats. 1945, ch. 1335.) In 1947 the partial recovery was increased as follows: "Where an injury causes both temporary and permanent disability, the injured employee is entitled to compensation for any permanent disability sustained by him in addition to any payment received by such injured employee for temporary disability; provided, however, that where the permanent disability rating is 70% or greater, it shall be conclusively presumed that temporary disability did not exceed 104 weeks." (Stats. 1947, ch. 1132.) Finally in 1949, the Legislature went the whole way and allowed *both* temporary and permanent disability compensation to be paid. It stated: "Where an injury causes both temporary and permanent disability, the injured employee is entitled to compensation for any permanent disability sustained by him *in addition to any payment received by such injured employee for temporary disability.*" (Stats. 1949, ch. 107. Italics added.) Here is a clear mandate of the Legislature that the permanent disability compensation *shall not* be diminished by any payment of temporary disability compensation. That is to say, the "loss of wages"—temporary disability compensation—shall not reduce the "loss of earning capacity"—permanent disability compensation. But under the strained construction of the statutes given in the majority opinion that mandate is completely ignored. It says that the unemployment disability payment, which is for the loss of wages only, the same as temporary disability compensation, *must* be deducted from the permanent disability compensation allowed for loss of earning

capacity. That puts the employee back where he was prior to 1945 with the temporary deducted from the permanent disability compensation allowed him. The unemployment disability benefit may be deducted from the temporary disability compensation, but the deduction must stop there, for if it extends to the permanent disability compensation, nothing was achieved by the 1945, 1947 and 1949 amendments to section 4661 of the Labor Code. The various statutes must be read together to reach the legislative intent. I cannot assume, as does the majority, that the Legislature intended to give with one hand and take away with the other.

The Industrial Accident Commission construed the statutes here involved in accord with the views herein expressed, and the majority concede that the policy of the Commission in so construing the statutes has a *"reasonable theoretical basis."* What is meant by the latter phrase is not clear in view of the reasoning and conclusion reached in the majority opinion. If it is meant that the interpretation placed upon the statutes by the Commission is reasonable, then it should be adopted by this court. That such construction is reasonable and not "tortuous" is obvious from the foregoing discussion.

For the foregoing reasons I would affirm the award.